**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSEPH WALTHOUR, | : | |
| | : | |
| Petitioner, | : | CIVIL NO. 3:CV-06-0086 |
| | : | |
| v. | : | (Judge Vanaskie) |
| | : | |
| FRANKLIN J. TENNIS, <u>et. al</u>, | : | |
| | : | |
| Respondent. | : | |

**MEMORANDUM**

I.   **INTRODUCTION**

Joseph Walthour filed this <u>pro se</u> civil rights action pursuant to 42 U.S.C. §

1983 on January 12, 2006.  Plaintiff subsequently filed an Amended Complaint (Dkt.

Entry 39) on September 18, 2006, and a Second Amended Complaint (Dkt. Entry 53)

on March 8, 2007.  Walthour names two categories of Defendants: (1) the "Medical

Defendants,"  consisting of Kathleen Kennedy, Dr. John Symons, Dr. Christina Doll,

Jodi Hicks, and Prisoners Health Services, and (2) the "Corrections Defendants,"

consisting of Franklin J. Tennis, Raymond Coffman, Jeffrey Rackovan, Sharon M.

Burks, and Richard Ellers.  Plaintiff claims that Defendants were deliberately

indifferent to his serious medical needs, contrary to the Eighth Amendment

proscription against cruel and unusual punishment and in violation of his Fourteenth

Amendment rights.  Presently pending are motions to dismiss pursuant to FED. R.

CIV. P. 12(b)(6) filed on behalf of the Medical Defendants (Dkt. Entry 55), and the

Corrections Defendants (Dkt. Entry 57).  Also pending are Plaintiff's motions to strike

(Dkt. Entry 60) and for appointment of counsel (Dkt. Entry 54).  For the reasons that

follow, the Medical Defendants' Motion to Dismiss will be granted in part and denied

in part, the Corrections Defendants' Motion to Dismiss will be granted, and Plaintiff's

motions to strike and for appointment of counsel will be denied.

## II.   BACKGROUND

In his Complaint, Walthour alleges that, on December 20, 2004, he submitted

a sick call request to the medical department at SCI-Rockview to obtain treatment for

a circular rash on his left cheek, left side of his chest, and left side of his abdomen.

On that same date, Defendant Kennedy visually examined him and diagnosed him

with tinea corporis, a fungal infection commonly referred to as "ringworm."  (Dkt.

Entry 53 at 4, ¶ 18.)  Kennedy gave him a shampoo containing selenium sulfide to

apply to the affected areas.  After two weeks of applying the shampoo, Plaintiff

noticed that the medication was ineffective.  (Id. at ¶ 20.)

_____On January 3, 2005, Walthour submitted a second sick call request to the

SCI-Rockview medical department, stating that the rash had spread to the other side

of his body.  After visually examining Plaintiff on that same date, Defendant Kennedy

gave him a topical antifungal cream containing Miconazole to apply to the affected

2

areas.  (Id. at ¶ 22.)  Plaintiff requested that Kennedy take a culture of one of the affected areas in order to confirm the diagnosis, but Kennedy refused to do so and also refused to refer him to a doctor. (Id. at 5, ¶¶ 23-24.)

_____Walthour applied the topical antifungal cream for three weeks.  Because he noticed that the rash continued to slowly spread, on January 24, 2005, he submitted a third sick call request, again complaining of a circular rash on his face, chest, and abdomen.  Following an evaluation by Defendant Kennedy, Defendant Doll signed an authorization to prescribe a 250 milligram oral capsule of griseofulvin ultramicrosize ("Gris-PEG"), to be taken daily with food for thirty (30) days. (Id. at ¶¶ 27-28.)  Immediately upon starting to take the Gris-PEG capsules, Plaintiff developed hives, excessive itching, fluid emission from the skin, burning sensation of the skin, peeling of the skin, excessive dryness of the skin, blurred vision, loss of vision in his right eye, and skin discoloration.  (Id. at ¶ 29.)

On March 21, 2005, Walthour submitted his fourth sick call request, complaining of what appeared to be an allergic reaction to Gris-PEG.  (Id. at 6, ¶ 32.) On that same date, Defendant Kennedy visually examined him but did not take any vital signs.  (Id. at ¶ 33.)  Plaintiff expressed concern that the Gris-PEG capsules seemed to be aggravating his condition.  (Id. at ¶ 35.)  Kennedy responded that he was experiencing his "immune system fighting off the tinea corporis along with the

3

Gris-PEG." (Id. at ¶ 37.)  Defendant Kennedy decided to refer him to be evaluated by Dr. Doll.  She then obtained authorization from Defendant Symons to administer an increased dosage of Gris-PEG from 250 milligrams to 500 milligrams to be taken once daily for an additional thirty days while Plaintiff was waiting to be evaluated by Dr. Doll.  (Id. at ¶ 35.)

Immediately upon starting the increased dosage of Gris-PEG, Walthour experienced a more intense reaction, including hives, blurred vision, loss of vision in the right eye, deeper skin discoloration of the face, neck, chest, and abdomen, uncontrollable itching, fluid emission from his face, excessive fatigue, excessive thirst, and disruption of sleep.  (Id. at ¶ 39.)  On April 1, 2005, he informed Corrections Officers Swelley and John that the medication he had been prescribed was causing skin discoloration, excessive itching, and vision loss in his right eye. (Id. at ¶ 41.)  Because the Corrections Officers were concerned that Plaintiff might become a target for an assault in the housing unit, they contacted Defendant Kennedy on April 1, 2005 to ask when Plaintiff would be evaluated by Defendant Doll.  (Id. at ¶ 42.)  Defendant Kennedy acknowledged the physical condition of Plaintiff's face, and "abruptly disconnected the phone call" without saying when Dr. Doll would see him.  (Id. at 43.)  The Corrections Officers ordered Plaintiff to submit a Department of Corrections Administrative Grievance ("DC-ADM") 804 to Defendant

4

Rackovan, who was Defendant Tennis's assistant, to inform them of Defendant Kennedy's treatment plan.  (Id. at ¶ 44.)

On April 4, 2005, Dr. Doll examined Plaintiff.  On April 11, 2005, she performed a punch biopsy on his left chest.  On April 22, 2005, Plaintiff saw Defendant Kennedy, who informed him that he was cured of the tinea corporis.  (Id. at ¶ 48.)

On April 24, 2005, Walthour consulted the Physician's Desk Reference in the prison library and learned that Gris-PEG is an antibiotic derived from a species of penicillin.  (Id. at ¶ 52.)  He is allergic to penicillin, and his allergy is noted in his medical history and Pennsylvania Department of Corrections ("DOC") medical record.  (Id. at ¶ 53).  Plaintiff immediately filed a DC-ADM 804 grievance and DC-135A request to staff form, which he directed to all Defendants.  (Id. at ¶ 56.)  He also made numerous requests to be evaluated by the prison's contract dermatologist, Dr. Dunn.  (Id. at ¶ 57.)

Walthour contends that the Medical Defendants were deliberately indifferent to his medical needs because they were aware that he was allergic to penicillin yet prescribed a medication that is a derivative of penicillin.  He further claims that his Fourteenth Amendment rights were violated because he was not given information about the medical treatment before it was administered so that he could decide

whether to submit to it.  Further, he claims that the Medical Defendants administered

Gris-PEG knowing that it causes cancerous liver tumors in male species, and thus

subjected Plaintiff to the risk of future harm.  Walthour contends that the Corrections

Defendants knew that the Medical Defendants were deliberately indifferent to his

medical needs through the grievances he submitted, yet failed to act.  As relief,

Walthour requests compensatory and punitive damages.

## III.   DISCUSSION

### A.   Motions to dismiss complaint

In considering a motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, the

Court must accept the truth of the plaintiff's factual allegations.  Morrison v. Madison

Dearborn Capital Partners III L.P., 463 F.3d 312, 314 (3d Cir. 2006).  A complaint

has to plead "only enough facts to state a claim to relief that is plausible on its face."

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007).  "While a complaint

attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

relief] requires more than labels and conclusions, and a formulaic recitation of a

cause of action's elements will not do."  Id. at 1964-65 (citation omitted).  To survive

a motion to dismiss, the factual allegations in the complaint "must be enough to raise

6

a right to relief above the speculative level." Id. at 1965.

To state a § 1983 claim, Walthour must plead two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived Plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States. Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000). Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). However, the personal involvement requirement may be satisfied by a showing of "personal direction or of actual knowledge and acquiescence." Id.; Pansy v. Preate, 870 F. Supp. 612, 630 (M.D. Pa. 1994), aff'd mem., 61 F.3d 896 (3d Cir. 1995). A doctor under contract to a state to provide medical services to prisoners is considered to be acting under color of state law, West v. Atkins, 487 U.S. 42, 54 (1988), and the principles just mentioned apply in that context as well. Hetzel v. Swartz, 909 F. Supp. 261, 264 (M.D. Pa. 1995).

In order to establish a claim against Defendants for inadequate medical care under § 1983 based on the Eighth Amendment, Walthour must show "(i) a serious medical need, and (ii) acts or omissions . . . that indicate deliberate indifference to that need." Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir.

7

2003).  See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention.  Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  In addition, "'if unnecessary and wanton infliction of pain' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id. (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety . . . ." Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Thus, a complaint that a physician "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment . . . ." Estelle, 429 U.S. at 106.  "A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most it is medical malpractice." Id. at 107.  "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990).  In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a § 1983 cause of

action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference.  See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

### 1.    The Medical Defendants' Motion to Dismiss

In their Motion to Dismiss, Defendants Symons, Doll, Kennedy, Hicks, and PHS argue that Plaintiff has stated no claims of wrongdoing by Defendants Hicks or PHS and that he has failed to state a claim of supervisor liability against Defendant Symons.  The Medical Defendants also argue that Walthour fails to state a professional liability claim against Defendants Kennedy, Doll, or Symons, that there is no basis for Plaintiff's due process claim, and that his fear of future injury fails to state a claim.  In addition, the Medical Defendants argue that Plaintiff's claims for compensatory and punitive damages are barred.

### a.    Deliberate indifference

The Medical Defendants argue that, because Plaintiff admits that he received medical care, he has failed to state a claim for deliberate indifference.  (See Dkt. Entry 56 at 7-8, 10.)  Plaintiff asserts that, when he made a sick call request on March 21, 2005, he indicated that he was having what appeared to be an allergic reaction to the Gris-PEG capsules.  (Dkt. Entry 53 at 6, ¶ 32.)  He further asserts that, following a visual examination by Defendant Kennedy, Defendant Symons,

9

without examining Plaintiff, authorized a double dosage of Gris-PEG to be taken for thirty days.  (Id. at ¶ 35.)  In addition, as of April 1, 2005 when the Corrections Officer's in Plaintiff's housing unit contacted Defendant Kennedy, Plaintiff still had not been evaluated by Defendant Doll.  (Id. at ¶ 43.)

It is true that Plaintiff received medical treatment.  Nevertheless, at this juncture, in accepting as true the facts alleged by Plaintiff, dismissal of his claims against Defendants Kennedy, Doll, and Symons is not warranted.  See White v. Napoleon, 897 F.2d 103, 106 (3d Cir. 1990).  See also Twombly, 127 S.Ct. at 1965, 1974.  The physical symptoms Plaintiff describes after taking Gris-PEG are serious, and the skin injuries would have been so obvious that a layperson would recognize the need for medical attention.  See Monmouth County, 834 F.2d at 347.  In addition, Plaintiff alleges that his allergy to penicillin is noted in his medical history and DOC medical record, yet Defendant Symons authorized Defendant Kennedy to administer a double dosage of the medication to Plaintiff without physically examining him. Further, even though Corrections Officers notified Defendant Kennedy on April 1, 2005 that Plaintiff had a more severe reaction to the double dosage of Gris-PEG, he was not examined by a doctor until April 4, 2005.  Accepting Plaintiff's allegations as true, he has pled enough facts to state a claim for deliberate indifference that is plausible on its face, and thus his claims against Defendants Kennedy, Doll, and

Symons will not be dismissed.  See Twombly, 127 S.Ct. at 1974.

### b.      Claims against Hicks and PHS

Plaintiff alleges that he submitted a grievance on April 1, 2005 directly to

Defendant Hicks, the Health Care Site Administrator, and that Defendant Hicks

referred it to Defendant Kennedy.  (Dkt. Entry 53 at 10, ¶ 65.)  Prison administrators

cannot be found deliberately indifferent under the Eighth Amendment because they

fail to respond to the medical complaints of an inmate being treated by a prison

physician, or because, as non-physicians, they defer to the medical judgment of the

inmate's treating physicians.  Durmer, 991 F.2d at 69.  "[A]bsent a reason to believe

(or actual knowledge) that prison doctors or their assistants are mistreating (or not

treating) a prisoner," a non-medical prison official will not be found to be deliberately

indifferent.  Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004).  In this case, it appears

that, because Plaintiff already had been under the care of medical personnel at SCI-

Rockview, Defendant Hicks deferred to their medical judgment by referring the

grievance to Defendant Kennedy.  Therefore, Plaintiff's claims against Defendant

Hicks will be dismissed.

As to PHS, Plaintiff clearly seeks to hold PHS liable purely under a theory of

respondeat superior.  He alleges that PHS "implemented a practice of providing the

cheapest, most bare bones system for treating PA state prisoners that money can

11

buy," but fails to allege how this policy is connected to the prescription of GRIS-Peg.

He also alleges that Defendants Symons, Doll, and Kennedy followed PHS practices

in their capacity as subcontractors of PHS.  Because liability cannot be predicated

solely on the basis of respondeat superior, Plaintiff's claims against PHS will be

dismissed.  See Rode, 845 F.2d at 1207.

### c.    Supervisor liability

The Medical Defendants argue that Plaintiff has failed to state a claim of

supervisor liability against Defendant Symons.  Plaintiff, however, has not sought to

hold Defendant Symons liable solely in his capacity as a supervisor.  Rather, Plaintiff

alleges that Defendant Symons was personally involved when he authorized

Defendant Kennedy to administer a double dosage of Gris-PEG to Plaintiff on March

21, 2005.  (Dkt. Entry 53 at 6, ¶ 35.)  Thus, Plaintiff has pled enough facts to state a

claim for deliberate indifference that is plausible on its face with respect to Defendant

Symons, and his claims against him will not be dismissed.  See Twombly, 127 S.Ct.

at 1974.

### d.    Professional liability

The Medical Defendants argue that Plaintiff has failed to state a claim for

professional liability against Defendants Kennedy, Symons, and Doll because he

failed to file a Certificate of Merit pursuant to Pennsylvania Rule of Civil Procedure

1042.3.  Because Plaintiff states in his opposition brief that he is not pursuing a claim of professional liability against these Defendants, (Dkt. Entry 59 at 7), this argument is moot.

### e.      Due process claim

Plaintiff argues that the Medical Defendants violated his Fourteenth Amendment right to refuse medical treatment.  Because Plaintiff's claim for deliberate indifference is covered under the Eighth Amendment, he cannot assert a claim under any other constitutional provision.  See County of Sacramento v. Lewis, 523 U.S. 833, 841-42 (1998).  Thus, his due process claim will be dismissed.

### f.      Fear of future injury

Plaintiff alleges that the manufacturer of Gris-PEG, Pedinol Pharmacol, released the results of a study indicating that, when the drug was administered to male laboratory mice, it produced cancerous liver tumors.  (Dkt. Entry 53 at 9, ¶ 59.) Plaintiff alleges that, as a medical doctor, Defendant Symons had knowledge that "Gris-PEG causes cancerous liver tumors in male species" and violated Plaintiff's Eighth Amendment rights in authorizing an increased dosage of Gris-PEG.  (Id. at 11, ¶ 68.)  He alleges that Defendants Doll and Kennedy disregarded the risk of future harm in the form of cancerous liver tumors when they prescribed and administered Gris-PEG to him.  (Id. at 11-12, ¶¶ 69, 70.)

Plaintiff does not allege that he currently has cancerous liver tumors.  A showing of an actual physical injury is required in order to recover damages.  See Fontroy v. Owens, 150 F.3d 239, 244 (3d Cir. 1998) (determining that inmate who shows no present physical injury cannot recover for fear of future injury as a result of exposure to asbestos); Stankowski v. Farley, 487 F. Supp. 2d 543, 564 n.15. Because Plaintiff has not shown an actual physical injury with respect to this claim, he cannot recover damages.  Thus, his claim with respect to his fear of future harm will be dismissed.

### g.      Compensatory and punitive damages

The Medical Defendants argue that Plaintiff's claims for compensatory and punitive damages are barred by the Prison Litigation Reform Act ("PLRA").  The PLRA, 42 U.S.C. § 1997e(e)(2), provides as follows:

> No Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

As discussed above, Plaintiff has alleged a physical injury with respect to his claims of deliberate indifference against Defendants Kennedy, Doll, and Symons. The Medical Defendants also argue that Plaintiff's claim for punitive damages should be dismissed because his allegations fail to rise to a level of intentional, willful,

wanton, outrageous or reckless conduct.  At this point, it is not possible to assess whether any of the Medical Defendants' actions rise to the level that warrants punitive damages.  Thus, Plaintiff's claims for compensatory and punitive damages will not be dismissed.

### 2.    The Corrections Defendants' Motion to Dismiss

Defendants Tennis, Coffman, Rackovan, Burks, and Ellers move to dismiss Plaintiff's Amended Complaint on the basis that Plaintiff has failed to state a claim of deliberate indifference upon which relief can be granted.  They also argue that his claims for monetary damages against them for actions they allegedly took while acting in their official capacities are barred by the doctrine of sovereign immunity. Because Plaintiff has failed to state a claim of deliberate indifference upon which relief can be granted against the Corrections Defendants, their motion to dismiss will be granted.

As to Defendants Tennis and Burks, Plaintiff attempts to hold them liable solely because his grievances were submitted to their offices.  He fails to allege that the grievances were submitted directly to them such that they were personally involved.  As to Defendant Coffman, Plaintiff alleges that he ignored an inmate request submitted on May 6, 2005, but admits that Defendant Rackovan replied to that request.  (Dkt. Entry 53 at 9, ¶¶ 61, 62.)  Thus, it would appear that Defendant

Coffman did not have any personal involvement because the request was handled by Defendant Rackovan.  Because liability may not be imposed solely on a theory of respondeat superior, Plaintiff's claims against Tennis, Burks, and Coffman will be dismissed.  See Rode, 845 F.2d at 1207.

Plaintiff alleges that Defendants Rackovan and Ellers investigated and responded to his grievances.  (Dkt. Entry 53 at 9-10, ¶¶ 62, 64.)  Defendant Rackovan replied to a DC-135A inmate request on May 6, 2005. (Id. at ¶ 62.) Defendant Ellers replied to a DC-ADM 804 grievance on May 3, 2005 and investigated a subsequent DC-135A inmate request and referred it to Defendant Symons.  (Id. at 10, ¶ 64.)

Accepting Plaintiff's allegations as true, it is apparent that these Defendants were personally involved in responding to Plaintiff's grievances.  However, liability may not be imposed on them solely because they denied his grievances.  The Third Circuit Court of appeals held in Durmer that a non-physician defendant cannot be held liable for being deliberately indifferent to an inmate's medical needs where, as here, the inmate is receiving treatment from the institution's health care staff. Durmer, 991 F.2d at 69.   Thus, Plaintiff's allegations as to the Corrections Defendants fail to state a claim upon which relief may be granted, and the claims will be dismissed.

16

**B.      Motion to Strike**

On March 29, 2007, Plaintiff filed a Motion to Strike (Dkt. Entry 60) pursuant

to Fed. R. Civ. P. 12(f).  In his Motion, Plaintiff requests that Section J of the Medical

Defendants' Brief (Dkt. Entry 56), arguing that Plaintiff fails to state a claim for future

injury, be stricken from the brief.  Plaintiff seeks to strike this section on the basis

that the case citations are immaterial and impertinent to his claim.

Federal Rule of Civil Procedure 12(f) applies to pleadings, and, "motions,

briefs or memoranda, objections, or affidavits may not be attacked by the motion to

strike."  U.S. v. Viola, No. 02-9014, 2003 WL 21545108 (E.D. Pa. July 7, 2003)

(quoting 2 Moore's Fed'l Practice, § 12.37 (Matthew Bender 3d ed.)).  Thus, Plaintiff

cannot utilize FED. R. CIV. P. 12(f) to strike a portion of Defendants' Brief, and his

Motion to Strike will be denied.

**C.      Motion for Appointment of Counsel**

Plaintiff has filed a second Motion for Appointment of Counsel.  (Dkt. Entry

54).  His previous Motion (Dkt. Entry 8) was denied (Dkt. Entry 29) because he failed

to set forth sufficient circumstances to warrant the appointment of counsel.

Specifically, this Court determined that Plaintiff had demonstrated his ability to

present comprehensible arguments, that the legal issues appeared to be relatively

uncomplicated, and that investigation did not appear beyond his ability.  (Dkt. Entry

29 at 2-3.)

In his present Motion, Plaintiff provides new reasons to support his request for counsel, including that he needs counsel to explain legal principles to him, to engage in extensive discovery, and to artfully present his case.   He further asserts that expert witness testimony will be required from the National Commission on Correctional Health Care, the DOC Bureau of Health Services, and Pedinol Pharmacol.   Nevertheless, Plaintiff does not present sufficient circumstances to suggest that he will suffer prejudice if he is forced to prosecute this case on his own. Contrary to Plaintiff's assertions, the legal issues are not complex, and it does not appear that expert testimony from the sources Plaintiff identifies will be required. Therefore, Plaintiff's Motion will be denied.   However, in the event that future proceedings demonstrate the need for counsel, the matter may be reconsidered, either by the Court on its own initiative, or upon a properly filed Motion by Plaintiff.

## IV.   Conclusion

Based upon the foregoing, the Medical Defendants' Motion to Dismiss will be granted in part and denied in part.   The Motion will be granted as to Plaintiff's claims against Defendants Hicks and PHS, the due process claim, and the fear of future injury claim.   The Motion will be denied in all other respects.   The Corrections Defendants' Motion to Dismiss will be granted.   Plaintiff's Motion to Strike and Motion

for Appointment of Counsel will be denied.  An appropriate Order follows.

<u>**s/ Thomas I. Vanaskie**</u>
Thomas I. Vanaskie
United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH WALTHOUR, | : | |
| | : | |
| Petitioner, | : | CIVIL NO. 3:CV-06-0086 |
| | : | |
| v. | : | (Judge Vanaskie) |
| | : | |
| FRANKLIN J. TENNIS, <u>et. al</u>, | : | |
| | : | |
| Respondent. | : | |

## ORDER

**NOW, THIS 4th DAY OF FEBRUARY, 2008,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1.     The Medical Defendants' Motion to Dismiss (Dkt. Entry 55) is **GRANTED** in part, and **DENIED** in part as follows:

a.     The Motion is **GRANTED** as to the following claims in Plaintiff's Amended Complaint:

i.     Plaintiff's claims against Defendants Jodi Hicks and Prisoner Health Services are dismissed for failure to state a claim upon which relief may be granted.  The Clerk of Court is directed to dismiss Jodi Hicks and Prisoner Health Services as parties to this action.

ii.     Plaintiff's due process claim is dismissed for failure to state a claim upon which relief may be granted.

            iii.     Plaintiff's claim that Defendants Symons, Doll, and Kennedy violated his Eighth Amendment rights by disregarding his risk of future injury in the form of cancerous liver tumors resulting from taking the medication Gris-PEG is dismissed for failure to state a claim upon which relief may be granted.

            b.     The Motion is **DENIED** in all other respects.

    2.     The Corrections Defendants' Motion to Dismiss (Dkt. Entry 57) is **GRANTED.**  The Clerk of Court is directed to dismiss Franklin J. Tennis, Raymond Coffman, Jeffrey Rackovan, Sharon M. Burks, and Richard Ellers as parties to this action.

    3.     Plaintiff's Motion to Strike (Dkt. Entry 60) is **DENIED**.

    4.     Plaintiff's Motion for Appointment of Counsel (Dkt. Entry 54) is **DENIED**, **WITHOUT PREJUDICE**.

                            **s/ Thomas I. Vanaskie**
                            Thomas I. Vanaskie
                            United States District Judge