IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH WALTHOUR, :
:
      Plaintiff, : CIVIL NO. 3:CV-06-0086
:
v. : (Judge Vanaskie)
:
FRANKLIN J. TENNIS, et. al, :
:
      Defendants. :

## MEMORANDUM

Background

Joseph Walthour, proceeding pro se, initiated this action pursuant to 42 U.S.C. § 1983 while previously confined at the Rockview State Correctional Institution, Bellefonte, Pennsylvania (SCI-Rockview).[1] An Amended Complaint (Dkt. Entry # 39) was filed on September 18, 2006, and a Second Amended Complaint (Dkt. Entry # 53) was subsequently submitted on March 8, 2007.[2]

By Memorandum and Order dated February 4, 2008, the Corrections Defendants'

---

[1] Plaintiff has been paroled and is presently residing in Philadelphia, Pennsylvania. (Dkt. Entry # 99.)

[2] For the convenience of the reader of this Order in electronic format, hyperlinks to the Court's record and to authority cited herein have been inserted. The Court accepts no responsibility for, and does not endorse, any product, organization, or content at any hyperlinked site, or at any site to which that site might be linked. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

motion to dismiss was granted and Defendants Franklin Tennis, Raymond Coffman, Jeffrey Rackovan, Sharon Burks, and Richard Ellers were dismissed as parties to this action. (Dkt. Entry # 72.) In addition, dismissal was granted in favor of two Medical Defendants, Jodi Hicks and Prison Health Services. (Id.) Remaining Medical Defendants are Physician Assistant (PA) Kathleen Kennedy, SCI-Rockview Medical Director Dr. John Symons, and Dr. Christina Doll, all of whom worked at SCI-Rockview during the relevant time period. (Dkt. Entry # 88, ¶¶ 2-4.)

With respect to his surviving claims, Plaintiff's Second Amended Complaint contends that after developing a circular rash on his left cheek, left side of his chest and left side of his abdomen, Walthour submitted a sick call request to the SCI-Rockview Medical Department on December 20, 2004. PA Kennedy visually examined Plaintiff that same day and diagnosed him as having tinea corporis, a fungal infection more commonly referred to as ringworm. (Dkt. Entry # 53, ¶ 18.) Walthour was given a shampoo containing selenium sulfide to apply to the affected areas. After using the shampoo for two (2) weeks, Plaintiff noticed that his condition was persisting. (Id. at ¶ 20.)

Walthour states that when the rash spread to the other side of his body, he submitted a second sick call request on January 3, 2005. Plaintiff was again seen by Kennedy, who gave him a topical antifungal cream containing Micconazole and told him to apply it to the affected areas. (Id. at ¶ 22.) However, it is alleged that PA Kennedy refused Plaintiff's requests to be referred to a doctor and that a culture be taken in order to confirm her diagnosis.

2

Despite using the antifungal cream for three (3) weeks, Plaintiff's rash purportedly continued to slowly spread. A third sick call request was submitted by Plaintiff on January 25, 2005. Following an evaluation by Kennedy, Defendant Doll signed an authorization for Plaintiff to be prescribed Griseofluvin Ultramicrosize (Gris-Peg). Plaintiff was to take one 250 milligram oral capsule of Gris-Peg daily with food for 30 days. (Id. at ¶¶ 27-28.) Upon taking Gris-Peg, Walthour claims that he immediately developed hives; excessive itching; fluid emission; burning sensation; excessive dryness and peeling of the skin; blurred vision; loss of vision in his right eye; and skin discoloration. (Id. at ¶ 29.)

On March 21, 2005, Plaintiff submitted a fourth sick call request. When Walthour expressed concern that the Gris-Peg was aggravating his condition, Kennedy allegedly responded that Plaintiff's immune system and the medication were fighting off the ringworm. However, Kennedy referred Plaintiff to be evaluated by Dr. Doll and obtained authorization from Dr. Symons to prescribe Plaintiff an increased dosage of Gris-Peg (from 250 milligrams to 500 milligrams daily for an additional 30 days).

Upon taking the increased dosage, Walthour purportedly experienced a more intense reaction, including hives, blurred vison, loss of vison in the right eye, deeper skin discoloration of the face, neck, chest, and abdomen, uncontrollable itching, fluid emission from his face, excessive fatigue, excessive thirst, and disruption of sleep. He informed Correctional Officers Swelley and John of the problems being caused by the medication. The correctional officers

3

telephoned Kennedy that same day and asked when Plaintiff would be seen by Dr. Doll. Kennedy purportedly failed to provide an answer, indicating only that the medical staff was aware of the Plaintiff's condition. As a result, the correctional officers allegedly advised Walthour to submit a grievance to Superintendent's Assistant Rackovan.

Three days later, on April 4, 2005, Doctor Doll examined Plaintiff. A punch biopsy of Plaintiff's left chest was taken on April 11, 2005. On April 22, 2005, Kennedy informed Plaintiff that he was cured of ringworm.

Walthour states that he is allergic to penicillin and that this allergy is noted in his medical history and DOC medical records. After conducting his own research, Plaintiff discovered that Gris-Peg is an antibiotic derived from a species of penicillin. Consequently, his Second Amended complaint contends that the remaining Medical Defendants acted with deliberate indifference by prescribing a medication that is a derivative of penicillin and by waiting three (3) days to provide him with treatment following his severe allergic reaction of April 1, 2005.

Presently pending is the Remaining Defendants summary judgment motion. (Dkt. Entry # 85.) The motion has been briefed and is ripe for consideration.[3]

Discussion

Defendants Symons, Doll and Kennedy claim entitlement to summary judgment on the

---

[3] Although Plaintiff has submitted an opposing brief (Dkt. Entry # 97), he has not filed a counter statement of material facts or submitted any opposing evidentiary materials.

grounds that: (1) the absence of expert testimony precludes consideration of Plaintiff's claims; (2) the evidence of record does not support a reasonable inference of deliberate indifference; and (3) the claims against Dr. Symons are improperly premised on a theory of respondeat superior liability.

Standard of Review

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); See also, Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to

5

interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted);see also Saldana, 260 F.3d at 232 (citations omitted).

Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Respondeat Superior

The remaining Medical Defendants assert that "there is no evidence that Dr. Symons was indifferent to Walthour's medical needs." (Dkt. Entry # 87 at 9.)  Accordingly, they conclude that Walthour's claim against Doctor Symons, the SCI-Rockview Medical Director, is improperly premised on a theory of respondeat superior and therefore should be dismissed as a matter of law.

A plaintiff, in order to state an actionable civil rights claim under § 1983, must plead two

6

essential elements: (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.[4] Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990). Civil rights claims brought cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Plaintiff alleges that Doctor Symons had personal involvement in the violation of his constitutional rights because on March 21, 2005, he authorized Kennedy's treatment plan to increase the dosage of Gris-Peg. (Dkt, Entry # 53, ¶ 68.) He adds that Doctor Symons failed

---

[4] A physician is considered to act under color of state law if he or she is under contract to provide medical services to prisoners. See Christy v. Robinson, 216 F. Supp. 2d 398, 412 n. 26 (D. N.J. 2002).

to advise him of the risks associated with the taking of Gris-Peg, especially in light of Plaintiff's allergy to penicillin. See id.

In a supporting declaration, Symons acknowledges that he co-signed an increase in Gris-Peg for Walthour on March 21, 2005. (Dkt. Entry # 86-3, Exhibit C, ¶ 5.) Doctor Symons adds that he evaluated Plaintiff on May 6, 2005, at which time he discontinued one medication and prescribed two additional creams. The Defendant also admits based upon a review of institutional medical records he "personally examined and treated" Plaintiff. (Id. at ¶ 4.)

It thus appears evident that Doctor Symons had direct personal involvement in Walthour's medical treatment. Accordingly, the claim against Medical Director Dr. Symons is not solely based upon a theory of respondeat superior, and he is not entitled to summary judgment on this basis.

Expert Testimony

As previously noted, Plaintiff's Second Amended Complaint contends that the Remaining Medical Defendants acted with deliberate indifference by treating him with a medication that is a derivative of penicillin and by waiting three (3) days before providing him with treatment following his severe April 1, 2005 allergic reaction. The moving Defendants argue that because Plaintiff has not presented any expert testimony or "admissible, credible, medical or scientific evidence" to support his claim that the use of "Gris-peg was improper or the cause of his hyperpigmentation" there is no basis for a deliberate indifference claim. (Dkt.

8

Entry # 87, at 5.) They add that Walthour cannot premise his Eighth Amendment claim solely on his own personal opinion that the use of Gris-Peg was improper given his penicillin allergy.

Plaintiff ultimately bears the burden of establishing a causal connection between the alleged deliberate indifference and his injuries. Absent an obvious causal relationship, expert medical testimony on causation must be presented.[5] Since this matter is presently at the summary judgment stage and Plaintiff has failed to come forward with any medical or scientific evidence to counter the declarations of Doctors Doll and Symons, their opinions relating to the causation of Walthour's rash and the use of Gris-Peg must be deemed unopposed. See Saldana, 260 F.3d at 232; Ford v. Mercer County Correctional Center, 171 Fed. Appx. 416, 420 (3d Cir. 2006). On this ground alone, Remaining Defendants are entitled to summary judgment.

Deliberate Indifference

The Remaining Defendants contend that Walthour's change in pigmentation was "the direct consequence of his fungal infection and was not caused by or a consequence of the Gris-peg." (Dkt. Entry # 87 at 3.) They add that the change in pigmentation "has faded and gone away." (Id.) It is also asserted that since Plaintiff was carefully followed and given a variety of medications, his allegation of insufficient care and follow up treatment is "sheer

---

[5] An obvious causal relationship only exists when the injury is either an "immediate and direct" or the "natural and probable" result of the underlying act. Texter v. Merlina, 2008 WL 545032 *1 (M.D. Pa. Feb. 26, 2008)(Conner, J.)

9

speculation." (Id. at 5.)

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill v. Gillis, 372 F.3d 218, 235 - 36 (3d Cir. 2004); Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component). Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1979). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347.

The Supreme Court has established that the proper analysis for deliberate indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994). Furthermore, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical

10

mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

As previously noted, Plaintiff's claim of deliberate indifference is twofold. First, he contends that the Remaining Defendants were deliberately indifferent by prescribing him Gris-Peg, a medication that is a derivative of penicillin. Second, Walthour argues that deliberate indifference also occurred when the Remaining Defendants waited three (3) days to provide him with treatment following his severe allergic reaction of April 1, 2005.

With respect to Plaintiff's first claim, it is undisputed that PA Kennedy and Dr. Doll prescribed Gris-Peg for Plaintiff's treatment on January 24, 2005. The dosage of Gris-Peg was increased by Kennedy and Dr. Symons on March 21, 2005. A biopsy performed on April 11, 2005 by Dr. Doll revealed that Plaintiff's skin infection was resolved and that he had developed a post-inflammatory pigmentation alteration. Plaintiff's institutional medical records were subsequently amended to provide that he was allergic to both penicillin and Gris-Peg. (Dkt. Entry # 86-2, at 70.)

According to an undisputed declaration submitted under penalty of perjury by Doctor Symons, "[p]encillin sensitive individuals have used "Gris-peg without difficulty." (Dkt Entry # 86-3, Exhibit C, ¶ 16.) Symons adds that it is common for individuals with skin inflamation or trauma to have changes in pigmentation and the change experienced by Walthour "was not caused by or a consequence of the Gris-peg." (Id. at ¶ 13.) Furthermore, the pigmentation

11

change "faded and went away." (Id. at ¶ 12.)

As previously noted, Plaintiff has not come forward with any competent medical evidence to contradict Dr. Symons' declaration or any other facts which could establish that the remaining Medical Defendants deviated from acceptable standards of the profession or acted or failed to act despite knowledge of a substantial risk of serious harm with respect to their decision to prescribe Gris-Peg for treatment of Plaintiff's ringworm. There are also no claims that any needed treatment was withheld. Even accepting as true Plaintiff's contention that Gris-Peg should not have been prescribed due to his penicillin allergy, such a contention solely regards the quality of the care provided by the remaining Medical Defendants and is insufficient for § 1983 liability  Moreover, under those well established standards, Plaintiff has failed to substantiate a cognizable deliberate indifference claim since the undisputed facts show both that he was provided with various medications and regular care, including diagnostic testing from Doctors Symons and Doll as well as PA Kennedy, and that his underlying rash and subsequent change in pigmentation were successfully treated.

Plaintiff's remaining deliberate indifference claim asserts that there was an undue delay in being provided with treatment following an April 1, 2005 allergic reaction. According to the Second Amended Complaint Plaintiff's Gris-Peg dosage was increased on March 21, 2005. Thereafter, on April 1, 2005, correctional officers purportedly questioned Plaintiff as to his physical condition. (Dkt. Entry # 53, ¶ 40.) Those officers then contacted PA Kennedy

12

and were informed only that the prison's medical staff was aware of Plaintiff's condition. Walthour was next medically treated on April 4, 2005, when he was seen by Doctor Doll.

"If unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." Young v. Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir. 2008)(quoting Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347). With respect to Plaintiff's claim of undue delay, it is initially noted that there are no assertions of involvement or acquiescence by Defendants Doll and Symons in the alleged deliberate indifference. Rather, the Second Amended Complaint asserts only that Kennedy was responsible for the failure to be seen on April 1, 2005. Second, there is no factual contention that Plaintiff required immediate medical care during the period of April 1-4, 2005. It is only averred that two correctional officers contacted PA Kennedy over their purported concern regarding Plaintiff's facial appearance and were told that the prison's medical staff were aware of the situation. There is no evidence that Plaintiff requested medical attention during this three (3) day period or that his condition worsened over the course of the relatively short three (3) day period. Moreover, it is undisputed that Walthour was treated by Doctor Doll on April 4, 2005, who concluded that a punch biopsy should be performed.[6] (Id. at ¶ 45.)

According to Doll's undisputed declaration, the results of the April 11, 2005 punch

---

[6] The punch biopsy was not performed until one week later on April 11, 2005.

biopsy "showed that the fungal infection had resolved, but Mr. Walthour had some mild eczema and post-inflammatory pigmentation." (Dkt. Entry # 86-3, Exhibit D, ¶ 7.) Based upon the undisputed facts, this is simply not a case where needed treatment for a serious medical condition was unnecessarily delayed for three (3) days.

Conclusion

Pursuant to the above discussion, the Remaining Defendants' motion for summary judgment will be granted. An appropriate Order will enter.

                                          s/ Thomas I. Vanaskie
                                          Thomas I. Vanaskie
                                          United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH WALTHOUR, | : | |
| | : | |
| Plaintiff, | : | CIVIL NO. 3:CV-06-0086 |
| | : | |
| v. | : | (Judge Vanaskie) |
| | : | |
| FRANKLIN J. TENNIS, et. al, | : | |
| | : | |
| Defendants. | : | |

ORDER

AND NOW, THIS 9th DAY OF SEPTEMBER, 2009, in accordance with the accompanying Memorandum, IT IS HEREBY ORDERED THAT:

1. Defendants Kathleen Kennedy, Dr. John Symons, and Dr. Christina Doll's motion (Dkt. Entry # 85) seeking entry of summary judgment is GRANTED.

2. The Clerk of Court is directed to mark this case CLOSED.

> s/ Thomas I. Vanaskie
> Thomas I. Vanaskie
> United States District Judge